1  ARTHUR D. LEVY (SB # 95659)
   445 Bush Street, 6th Floor
2  San Francisco, California 94108
   Tel. (415) 702-4550

3  BRYAN KEMNITZER (SB # 66401)
   KRISTIN KEMNITZER (SB # 278946)
4  KEMNITZER, BARRON & KRIEG, LLP
   445 Bush Street, 6th Floor
5  San Francisco, California 94108
   Tel. (415) 632-1900

6  ELIZABETH S. LETCHER (SB # 172986)
   HOUSING AND ECONOMIC RIGHTS ADVOCATES
7  1814 Franklin Street, Suite 1040
   Oakland, California 94612
8  Telephone:  (510) 271-8443

9  Attorneys for Plaintiff
   BARBARA VELLINE
10 Individually and on Behalf of
   All Others Similarly Situated

11                  **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13 BARBARA VELLINE, individually and on       Case No.  3:14-cv-1916 JD
   behalf of All Others Similarly Situated,
14                                            **PLAINTIFF'S MEMORANDUM IN**
                                              **OPPOSITION TO DEFENDANT**
15                  Plaintiff,                **JPMORGAN CHASE**
                                              **BANK, N.A.'S MOTION TO DISMISS AND**
16          vs.                               **STRIKE PLAINTIFF'S COMPLAINT**

17 JP MORGAN CHASE BANK, N.A., a              Date: August 27, 2014
   national association; and DOES 1 through 20,  Time: 9:30 a.m.
18                                            Courtroom: 11
                  Defendants.                 Judge: Hon. James Donato
19
                                              Complaint Filed: March 17, 2014
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................1

A.    Section 580d, as Written in 2013, Barred All Personal Liability on a Mortgage Once the Lender Non-Judicially Foreclosed............................................................ 2

B.    Chase Violated the Rosenthal Act by Using a Letter that Left the False Impression that the Borrower Was Personally Liable to Pay the Claimed Deficiency. ............. 3

C.    The Time-Barred Debt Cases Are Inapplicable........................................................ 5

D.    The 2014 Amendment to Section 580d Did Not Retroactively Change Longstanding Judicial Interpretation that the Statute Barred Personal Liability..... 6

E.    The Complaint Satisfies Even Cadlerock's Requirements. ...................................... 8

F.    The Court Should Reject Cadlerock as Inconsistent with California Supreme Court Authority Interpreting Consumer Protection Statutes in General and Section 580d in Particular.......................................................................................................... 11

G.    FCRA Preemption is Limited to the Allegations of Complaint Paragraphs 26 and 41(b)....................................................................................................................... 12

H.    Plaintiff's Second Cause of Action, for Violation of the State Credit Reporting Statute, States a Claim. ......................................................................................... 13

I.    Plaintiff's UCL and FAL Causes of Action Are Sufficient.................................... 14

J.    The Court Should Deny Chase's Motion to Strike Plaintiff's Class Allegations. . 15

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

Abdelfattah v. Carrington Mortg. Services LLC
    2013 WL 495358 (N.D. Cal. Feb 7, 2013) ........................................................ 13

5

Abels v. JBC Legal Group, P.C.
    428 F.Supp.2d 1023 (N.D. Cal. 2005) ................................................................. 6

6

7

Cadlerock Joint Venture, L.P. v. Lobel
    206 Cal.App.4th 1531 (2012) ............................................... 10, 11, 12

8

Cholakyan v. Mercedes-Benz USA, LLC
    796 F.Supp.2d 1220 (C.D. Cal. 2011) ............................................... 15

9

10

Clark v. Capital Credit & Collection Servs.
    460 F.3d 1162 (9th Cir. 2006) ........................................................... 4

11

Commonwealth Mortgage Assurance Co. v. Superior Court
    211 Cal. App. 3d 508 (1989) ............................................................. 6

12

13

Cornelison v. Kornbluth
    15 Cal.3d 590 (1975) ......................................................................... 2

14

Cruz v. Int'l Collection Corp.
    673 F.3d 991 (9th Cir. 2011) ............................................................. 6

15

16

DeBerard Properties v. Lim
    25 Cal.4th 659  (1999) ....................................................................... 6

17

Dreyfuss v. Union Bank of California
    24 Cal.4th 400 (2000) ....................................................................... 3

18

19

Duffy v. Landberg
    215 F.3d 871 (8th Cir. 2000) ............................................................. 4

20

Freedland v. Greco
    45 Cal.2d 462 (1955) ................................................................. passim

21

22

Freyermuth v. Credit Bureau Serv., Inc.
    248 F.3d 767 (8th Cir. 2001) .......................................................... 5, 6

23

Gonzales v. Arrow Financial Services, LLC
    660 F.3d 1055 (9th Cir. 2011) ....................................................... 4, 5

24

25

Gorman v. Wolpoff & Abramson, LLP
    584 F.3d 1147 (9th Cir. 2009) ......................................................... 13

26

Heritage Pacific Financial, LLC v. Monroy
    215 Cal.App.4th 972 (2013) ............................................................. 6

27

28

1

<u>**TABLE OF AUTHORITIES CONTINUED**</u>

2

Page(s)

3

**Cases**

4

Herrera v. LCS Fin. Servs. Corp.

5
  2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) ..................................................... 3

6
Hollings v. Hollings
  8 N .J. Super. 552, 73 A.2d 755 (Ch. Div. 1950) ............................................... 6

7
Huertas v. Galaxy Asset Mgmt.

8
  641 F.3d 28 (3d Cir. 2011) ................................................................................. 6

9
Johnson v. Wells Fargo Home Mortg., Inc.
  2013 WL 7211905 (C.D. Cal. Sept 13, 2013) ................................................... 3

10
Kwikset Corp. v. Superior Court

11
  51 Cal.4th 310 (2011) ...................................................................................... 14

12
Mann v. Wells Fargo Bank, N.A.
  2012 WL 6025781 (N.D. Cal. Dec. 4, 2012) .................................................... 10

13
Manning v. Boston Medical Center Corp.

14
  725 F.3d 34 (1st Cir. 2013) ............................................................................... 15

15
McClung v. Employment Development Dept.
  34 Cal.4th 467 (2004) ........................................................................................ 7

16
McCollough v. Johnson, Rodenburg & Lauinger, LLC

17
  637 F.3d 939 (9th Cir. 2011) .......................................................................... 5, 6

18
Moore v. Kayport Package Exp., Inc,
  885 F.2d 531 (9th Cir. 1989) ........................................................................ 14, 15

19
Murphy v. Ocwen Loan Servicing, LLC

20
  2104 WL 651914 (E.D. Cal. Feb, 19, 2014) ...................................................... 3

21
Rex v. Chase Home Finance LLC
  905 F. Supp. 2d 1111 (C.D. Cal. 2012) .............................................. 12, 13, 14

22
Roseleaf Corp. v. Chierighino

23
  59 Cal.2d 35 (1963) ....................................................................................... 1, 8

24
Simon v. Superior Court
  4 Cal.App.4th 63 (1992) ............................................................................ passim

25
Swanson v. S. Or. Credit Serv., Inc.

26
  869 F.2d 1222 (9th Cir.1988) ............................................................................ 5

27
Thoryk v. San Diego Gas & Electric Co.
  225 Cal.App.4th 386 (2014) .............................................................................. 2

28

1

## TABLE OF AUTHORITIES CONTINUED

2

Page(s)

3

**Cases**

4

Tobacco II Cases
    46 Cal. 4th 298 (2009) ........................................................................... 15

5

Union Bank v. Gradsky
    265 Cal.App.2d 40 (1968) ...................................................................... 2, 9

6

7

Vernon v. City of Los Angeles
    27 F.3d 1385 (9th Cir. 1994) ................................................................. 11

8

Weinstein v. Rocha
    208 Cal.App.4th 92 (2012) ...................................................................... 9

9

10

Western Security Bank, N.A. v. Superior Court
    15 Cal.4th 232 (1997) ............................................................................. 8, 9

11

Westinghouse Credit Corp. v. Barton
    789 F. Supp. 1043 (C.D. Cal. 1992) ...................................................... 2

12

13

**Statutes**

14

15 U.S.C. § 1681 ........................................................................................ 12, 13

15

15 U.S.C. § 1681t ....................................................................................... 12

16

15 U.S.C. § 1692 ........................................................................................ 3, 4, 5, 6

17

15 U.S.C. § 1692e ...................................................................................... 3, 5

18

15 U.S.C. § 1692f ...................................................................................... 5, 6

19

15 U.S.C.§ 1681s ....................................................................................... 12

20

Bus. & Prof. Code, § 17200 ..................................................................... 12, 13, 14, 15

21

Bus. & Prof. Code, § 17500 ..................................................................... 12, 13, 15

22

Civ. Code, § 1785.1 ................................................................................... 12, 14

23

Civ. Code, § 1785.25 ................................................................................. 12, 13

24

Civ. Code, § 1788 ...................................................................................... passim

25

Civ. Code, § 1788.17 ................................................................................. 3

26

Civ. Code, § 360.5 ..................................................................................... 6

27

Civ. Code, § 580b ...................................................................................... 6

28

Civ. Code, § 726 ........................................................................................ 1

1

## **TABLE OF AUTHORITIES CONTINUED**

2

Page(s)

3

**Statutes**

4

Civ. Code, §1785.31 ........................................................................................ 12

5

Civ.Code, § 580d .................................................................................... passim

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Chase non-judicially foreclosed the first mortgage on plaintiff's Oakland home.  Because of the decline in property values, the sale did not completely satisfy the first mortgage, and yielded nothing toward the second mortgage.  By electing to foreclose at a non-judicial sale (instead of going to court for a decree of judicial foreclosure), Chase fell subject to Code of Civil Procedure section 580d.  This 74-year old "anti-deficiency" statute eliminated plaintiff's personal liability on the first mortgage.

Generally, a non-judicial foreclosure of a first mortgage does not eliminate the borrower's personal liability on a second mortgage where the foreclosure yields no recovery on the second.  Roseleaf Corp. v. Chierighino, 59 Cal.2d 35, 43-44 (1963).  However, the Roseleaf rule does not apply where (as here) the originating lender splits a single mortgage into simultaneous first and second "piggyback" mortgages;  to prevent lenders from using loan splitting as a device to evade section 580d, foreclosure of the first also eliminates personal liability on a second, "piggyback" mortgage.  Simon v. Superior Court, 4 Cal.App.4th 63, 78 (1992).

Chase's foreclosure sale therefore eliminated plaintiff's personal liability on both of the "piggyback" mortgages.  In attempting to collect the second with a collection letter stating that plaintiff "owed" the $116,000 balance, Chase violated California fair debt collection law.   Chase misrepresented the character of the debt by leaving the false impression that plaintiff was still personally liable to pay the second, when under section 580d the foreclosure sale exonerated her from all personal liability on both mortgages.

**ARGUMENT**

Section 580d prohibits a lender from obtaining a deficiency judgment against the borrower if the lender forecloses by exercising the power of sale in a deed of trust or mortgage and holding a private, non-judicial foreclosure sale, as opposed to filing a lawsuit to obtain a decree of judicial foreclosure sale pursuant to Code of Civil Procedure section 726.  Simon, 4 Cal.App.4th at 69-70.

Section 580d provides that once the lender forecloses at a non-judicial sale, the loan becomes non-recourse, that is, the borrower no longer has any personal liability to pay the loan.

The statute only extinguishes the borrower's personal liability; it does not exonerate additional security or <u>bona fide</u> third party guarantors from liability for the debt.  Non-judicial foreclosure thus renders the loan non-recourse <u>for the borrower</u>, but leaves the debt intact for the limited purpose of enforcing additional security and guarantees.

### A.      Section 580d, as Written in 2013, Barred All Personal Liability on a Mortgage Once the Lender Non-Judicially Foreclosed.

Chase's argument, that under section 580d as it read at the time of the collection letter Chase was entitled to pursue plaintiff to collect a deficiency after the foreclosure sale as long as Chase did not obtain a deficiency judgment, is wide of the mark.   The issue is whether Chase committed debt collection violations of the <u>Rosenthal Act</u>, not section 580d.  Chase violated Rosenthal by leaving the false impression that plaintiff remained personally liable to pay the second loan, when in fact section 580d exonerated plaintiff from all personal liability.

A "deficiency judgment" refers to a <u>personal judgment</u> against the borrower for the loan balance remaining over and above the fair value of the security.  <u>Cornelison v. Kornbluth</u>, 15 Cal.3d 590, 603 (1975) (emphasis added).  By barring liability for a personal judgment, section 580d extinguishes the borrower's personal liability on the loan.

In section 580d, "[t]he legislature clearly intended to protect the debtor from personal liability following a non-judicial sale of the security.  No liability, direct or indirect, should be imposed upon the debtor following a non-judicial sale of the security." <u>Westinghouse Credit Corp. v. Barton</u>, 789 F. Supp. 1043, 1045 (C.D. Cal. 1992) (quoting <u>Union Bank v. Gradsky</u>, 265 Cal.App.2d 40, 46 (1968).)  "Under § 580d, any attempt to create recourse, or obtain a deficiency judgment, in a non-judicial sale is contrary to statute." <u>Id.</u> at 1046.

> "Following [non-judicial] foreclosure, defendants were left with an unsecured, <u>unenforceable</u> claim for the balance due on the promissory note.  They had <u>no recourse</u> beyond the security."  Following foreclosure, <u>no further mutual obligations remain</u> between the parties on the unpaid balance of the note.

<u>Thoryk v. San Diego Gas & Electric Co.</u>, 225 Cal.App.4th 386, 407 (2014) (citations omitted) (emphasis added).

1   Contrary to Chase's gloss, plaintiff's "premise" and "theory" are not, and have

2   never been, and that "Plaintiff's <u>debt</u> on the second mortgage was extinguished by the

3   non-judicial foreclosure of her first mortgage."  (Chase's Brief at 2:1-5 (emphasis added).)

4   Plaintiff contends only that her personal liability for the second mortgage was

5   extinguished by the non-judicial foreclosure, and that Chase's collection letter was

6   deceptive in leaving the false impression otherwise.[1]

7   Section 580d does not extinguish the debt to the extent that the borrower has given

8   additional security for the debt or there are genuinely independent third-party guarantors.

9   Otherwise, creditors would be disabled from collecting from other security for the debt:

> Under settled decisional law, a creditor's resort to any and all security on a debt does not implicate the anti-deficiency provisions.  As we held nearly 60 years ago in <u>Hatch v. Security–First Nat. Bank</u>, <u>supra</u>, 19 Cal.2d at page 258, 120 P.2d 869, Code of Civil Procedure section 580a applies only to shield a borrower from personal liability; it has "no application to a situation where ... no attempt is made by the creditor to secure a personal judgment against a debtor for a deficiency remaining after sale under a deed of trust."

14  <u>Dreyfuss v. Union Bank of California</u>, 24 Cal.4th 400, 408 (2000); <u>Freedland v. Greco</u>, 45 Cal.2d

15  462, 466 (1955) (applying to § 580d).

16

17  **B.    Chase Violated the Rosenthal Act by Using a Letter that Left the False Impression that the Borrower Was Personally Liable to Pay the Claimed Deficiency.**

18

19  The Rosenthal Act incorporates certain sections of the Fair Debt Collection Practices Act,

20  15 U.S.C. §§ 1692 <u>et seq</u>. (FDCPA), and makes them independently actionable as a matter of

21  state law. Cal. Civ. Code, § 1788.17.

22  Section 1788.17 expressly incorporates sections 1692e  of the FDCPA, which prohibits

23  "[t]he false representation of character, amount, or legal status of any debt" (15 U.S.C. §

24

25  [1]  Chase's citations to <u>Johnson v. Wells Fargo Home Mortg., Inc.</u>, 2013 WL 7211905 (C.D. Cal.  Sept 13, 2013), <u>Murphy v. Ocwen Loan Servicing, LLC</u>, 2104 WL 651914 (E.D. Cal.

26  Feb, 19, 2014), and <u>Herrera v. LCS Fin. Servs. Corp.</u>, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) address only the straw "debt extinction" theory of section 580d that Chase attacks in its

27  brief.  None of these cases considered plaintiff's arguments that section 580d eliminates personal liability for the debt and that debt collection letters leaving a false impression of personal liability

28  violate the Rosenthal Act.  <u>See also</u> footnote 2, below.

1  1692e(2)) and "[t]he use of any false representation or deceptive means to collect or attempt to

2  collect any debt or to obtain information concerning a consumer" (§ 1692e(10)).

3      The FDCPA applies the objective "least sophisticated debtor" standard of liability under

4  section 1692e.  Gonzales v. Arrow Financial Services, LLC, 660 F.3d 1055, 1061 (9th Cir. 2011).

5  This extraordinarily lenient standard is "'designed to protect consumers of below average

6  sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those

7  individuals are targeted by debt collectors." Id. at 1062 (quoting Duffy v. Landberg, 215 F.3d

8  871, 874–75 (8th Cir. 2000)).  The Court should read Chase's letter as it would be read by "the

9  gullible as well as the shrewd ... the ignorant, the unthinking and the credulous." Clark v. Capital

10 Credit & Collection Servs., 460 F.3d 1162, 1171 (9th Cir. 2006) (internal citation omitted).

11     Applying the least sophisticated debtor standard, Chase's collector's form letter violates

12 section 1692e(2) by "falsely representing the character, amount, [and] legal status" of the debt.

13 The letter states that plaintiff "owed" the entire balance, that the debt was "due," and that the debt

14 collector would assume the debt was "valid" unless the borrower objected.  "Owe" has the

15 primary meaning of "to need to pay or repay money to a person, bank, business, etc." Merriam-

16 Webster Online Dictionary, http://www.merriam-webster.com/dictionary/owe  [as of June 30,

17 2014].   Chase's letter fails to inform plaintiff that she has no personal liability to pay the balance,

18 that she does not "need to pay" it, and that any payment would be purely voluntary.

19     Section 1692e(10) generally outlaws any "any false, deceptive, or misleading

20 representation or means."  A statement in a letter that is literally true may nevertheless be

21 deceptive. Gonzales, 600 F.3d at 1062.  A collection letter is deceptive where it can be

22 reasonably read to have two or more different meanings, one of which is inaccurate.  Id. at 1061.

23 "[C]onsumers are under no obligation to seek explanation of confusing or misleading language in

24 debt collection letters." Id. at 1062.

25     Chase's letter is deceptive because it can reasonably be read as implying that plaintiff is

26 legally obligated to pay the balance he/she "owes," and that Chase could sue plaintiff for that

27 balance.  Even assuming that "owes" were susceptible to a subtle interpretation that the debt is

28 only a theoretical or moral obligation, the least sophisticated consumer is unlikely to appreciate

1   the nuance, and instead believe he/she is legally obligated to pay and could be subjected to hard

2   consequences.

3        The burden was on Chase before sending the letter to clarify any ambiguity: "the debt

4   collector that 'goes perilously close to an area of proscribed conduct takes the risk' that it will be

5   liable under the FDCPA for misleading consumers." Gonzales, 660 F.3d at 1063 (quoting

6   Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1228 (9th Cir.1988)).

7       **C.     The Time-Barred Debt Cases Are Inapplicable.**

8        Chase analogizes deficiency collections to collection of a time-barred debt. (Chase's

9   Brief at pp. 9-10.) As Chase notes, the Eighth Circuit has held that a mere request to pay a debt

10   barred by the statute of limitations does not violate the FDCPA, as long the collector does not

11   employ deceptive means or otherwise violate the statute. Freyermuth v. Credit Bureau Serv.,

12   Inc., 248 F.3d 767, 771 (8th Cir. 2001).

13        The Ninth Circuit has not approved Freyermuth, and there are good reasons for courts in

14   this Circuit to hold that the FDCPA bars even pre-suit collection of time-barred debts. The

15   FDCPA prohibits "[t]he collection of any amount … unless such amount is expressly authorized

16   by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1). In the Ninth

17   Circuit, simply filing suit on a time-barred debt clearly violates the FDCPA. McCollough v.

18   Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 958 (9th Cir. 2011) (summary judgment for

19   debtor affirmed). If suing on a time-barred debt violates the Act, pre-suit efforts to collect such

20   debts are likewise attempts to collect amounts not "permitted by law." At least in the absence of

21   clear disclosure that a debt is time-barred and legally uncollectable, such requests inherently

22   mislead the least sophisticated debtor about "the character, amount, or legal status" of the time-

23   barred debts, in violation of section 1692e(2).

24        Moreover, section 580d is essentially different from a statute of limitations, which merely

25   restricts remedies after a number of years and is waivable by the debtor. The anti-deficiency laws

26   are not simply remedial; they reflect the public policy of the state, are unwaivable, and render the

27   debt itself non-recourse.

28

1   "[A] statute of limitations 'is a bar to the remedy only, and does not extinguish, or even

2   impair, the obligation of the debtor'." Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32-33 (3d

3   Cir. 2011) quoting Hollings v. Hollings, 8 N .J. Super. 552, 73 A.2d 755, 757 (Ch. Div. 1950));

4   Freyermuth, 248 F.3d at 771 ("a statute of limitations does not eliminate the debt; it merely limits

5   the judicial remedies available").  Waivers and extensions of the statute of limitations are

6   permitted; limitations does not reflect an unwaivable public policy.  (E.g., Abels v. JBC Legal

7   Group, P.C., 428 F.Supp.2d 1023, 1027 (N.D. Cal. 2005); Cal. Code Civ. Proc. § 360.5.)

8        By contrast, anti-deficiency protection is an intrinsic characteristic of the debt, an absolute

9   bar to personal liability on the loan.  Anti-deficiency protection reflects the public policy of the

10  State and is unwaivable by the borrower.  Commonwealth Mortgage Assurance Co. v. Superior

11  Court, 211 Cal. App. 3d 508, 517 (1989) (section 580d); DeBerard Properties v. Lim, 25 Cal.4th

12  659, 663, 670-71 (1999) (section 580b).

13       Attempts to collect deficiencies barred by section 580d violate 15 U.S.C. section 1692f (1)

14  by seeking to collect an amount not "expressly authorized by the agreement creating the debt or

15  permitted by law."  McCollough, 637 F.3d at 950 (unfounded claim for attorney's fees violated

16  FDCPA);  Cruz v. Int'l Collection Corp., 673 F.3d 991, 997 (9th Cir. 2011) (letter impermissibly

17  adding interest and fees violated FDCA); Heritage Pacific Financial, LLC v. Monroy, 215

18  Cal.App.4th 972, 998 (2013) (mere collection notice a "clear violation" of the FDCPA where

19  foreclosure extinguished junior loan under anti-deficiency statutes).

20   **D.    The 2014 Amendment to Section 580d Did Not Retroactively Change
            Longstanding Judicial Interpretation that the Statute Barred Personal
21          Liability.**

22       Chase argues that the change in language of section 580d effective January 1, 2014

23  establishes that until then, Chase was entitled to collect deficiencies barred by section 580d, as

24  long as it did not obtain a deficiency judgment.   However, as the preceding discussion shows, the

25  courts have consistently construed the pre-2014 version of the statute as barring personal liability

26  of the borrower after a non-judicial foreclosure sale.

27       Nothing in the new law changed that.  By adding words to section 580d intended to clarify

28  it and to prevent creditors from making the very arguments Chase makes here, the Legislature did

1   not suggest that prior judicial opinions were wrong in holding that the statute rendered foreclosed

2   mortgages non-recourse.  Nor could it.

3          In amending the statute in 2013, the Legislature had no power to declare what the law

4   already was or had been.  The "Legislature has no authority to interpret a statute. That is a judicial

5   task. The Legislature may define the meaning of statutory language by a present legislative

6   enactment which, subject to constitutional restraints, it may deem retroactive.   But it has no

7   legislative authority simply to say what it did mean."  McClung v. Employment Development

8   Dept., 34 Cal.4th 467, 473 (2004).

9          The Assembly Judiciary Committee Report and Assembly Floor Report, which post-date

10  the initial Senate Floor Report that Chase submitted, establish that the Legislature intended A.B.

11  426 to clarify existing law, not to change it.   (Plaintiff's Request for Judicial Notice, Ex. "A" at

12  p. 1;  "B" " at p. 3. ) The Floor Report for the June 24, 2013 Assembly vote on the bill states:

13          This bill seeks to clarify existing law relating to the status of deficiency after
         foreclosure. The author contends that some lenders are attempting to collect
14        deficiencies even after foreclosure, notwithstanding the fact that the purpose of the
         anti-deficiency statutes is to relieve the borrower who has been foreclosed upon
15        from any remaining debt. It is unclear whether these lenders are doing this
         fraudulently (i.e., knowing that they have no right to collect and hoping to take
16        advantage of the borrower's lack of knowledge) or if these lenders genuinely
         believe that their loans are not covered by the anti-deficiency statutes.
17        Alternatively, it may be that some creditors believe that the anti-deficiency statute
         simply means that the creditor is unable to obtain a judgment from the court, but it
18        does not mean that the underlying debt is extinguished. This bill seeks to clarify
         that where a statute prohibits a deficiency judgment, the underlying debt is
19        effectively extinguished and, as such, is no longer owed and cannot be collected.
         Arguably, existing law and basic logic already presume this – if the court cannot
20        award a deficiency judgment, there is no longer any debt that can be collected. But
         some lenders have allegedly been exploiting a formalistic distinction between
21        failure to obtain a judgment, on the one hand, and the existence of an underlying
         debt, on the other, in order to convince borrowers that they still owe the
22        deficiency. Even if the failure to obtain a deficiency judgment does not
         theoretically extinguish the debt, the debt is practically extinguished if the creditor
23        has no power to collect it.

24  (Id. Ex. "B" at p. 3 (emphasis added.)

25         On June 11, 2013, the Assembly amended the original version of the bill the Senate had

26  passed on May 6 to add Section 1 and a new subsection (b) to section 580d to make clear that the

27  new legislation did not affect the liability of other collateral and guarantors for the debt.   (Id. Ex.

28  "C", "D".)  The Senate approved this amendment, which appears in the final bill. (Id. Ex. "D".)

As previously explained, the courts had never applied section 580d to relieve collateral or bona fide guarantors from liability -- only the borrower personally.  Although some reports on A.B. 426 claim that the legislation would "extinguish the debt," the Assembly amendment provided just the opposite, by maintaining the debt to preserve continued collection against additional collateral and from guarantors.

A.B. 426 did not eliminate personal liability because the courts had long recognized that section 580d already barred it.  "Legislation that is merely declaratory of pre-existing law is not retroactive.  Such a legislative act has no retrospective effect because the true meaning of the statute remains the same."   Western Security Bank, N.A. v. Superior Court, 15 Cal.4th 232, 243 (1997).  "[T]he surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning … One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation."  Id.

Here, the Legislature was responding promptly to recent attempts, like Chase's, to distort section 580d.  The Court should reject Chase's attempt to pervert a legislative intent to clarify the illegality of Chase's collection activity into a validation of it.

### E.    The Complaint Satisfies Even Cadlerock's Requirements.

Under Roseleaf v. Chiereghino, the non-judicial foreclosure of a first mortgage bars personal liability on the first, and a "sold out junior" (one who receives nothing from the foreclosure sale) can still pursue a deficiency claim against the borrower.

Simon qualifies Roseleaf by holding that this rule does not apply to a second mortgage where the lender has split a single loan into two "piggyback mortgages." Simon, 4 Cal.App.4th at 78. The Court reasoned that otherwise, piggybacking the loans could be a subterfuge to evade the statute and enable lenders to obtain the "excessive recoveries" the Legislature intended to prohibit:

> We will not sanction the creation of multiple trust deeds on the same property,
> securing loans represented by successive promissory notes from the same debtor,

1    as a means of circumventing the provisions of section 580d. The elevation of the
     form of such a contrived procedure over its easily perceived substance would deal
2    a mortal blow to the anti-deficiency legislation of this state.  Assuming, arguendo,
     legitimate reasons do exist to divide a loan to a debtor into multiple notes thus
3    secured, section 580d must nonetheless be viewed as controlling where, as here,
     the senior and junior lenders and lienors are identical and those liens are placed on
4    the same real property. Otherwise, creditors would be free to structure their loans
     to a single debtor, and the security therefor, so as to obtain on default the secured
5    property on a trustee's sale under a senior deed of trust; thereby eliminate the
     debtor's right of redemption thereto; and thereafter effect an excessive recovery by
6    obtaining a deficiency judgment against that debtor on an obligation secured by a
     junior lien the creditor chose to eliminate.

7    Simon, 4 Cal.App.4th at 77-78 (emphasis added).

8         Simon recognized that "[t]he courts have exhibited a very hospitable attitude toward the

9    legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal

10   construction that often goes beyond the narrow bounds of the statutory language."  Simon, 4

11   Cal.App.4th at 78 (quoting Union Bank v. Wendland, 54 Cal.App.3d 393, 408 (1976) (conc. opn.

12   of Elkington, J.)); see also Weinstein v. Rocha, 208 Cal.App.4th 92, 97 (2012).

13        Simon expressly relied on Freedland v. Greco, in which the California Supreme Court

14   interpreted section 580d broadly to prevent evasion.  The Court held that where two notes were

15   given, one secured by real estate and a second for the same debt secured by a chattel mortgage,

16   section 580d applied following foreclosure of the chattel mortgage, even though deficiency

17   judgments were permitted after the foreclosure of the chattel mortgage.  The Supreme Court held

18   "It is unreasonable to say the Legislature intended that section 580d could be circumvented by

19   such a manifestly evasive device. In such a situation the legislative intent must have been that the

20   two notes are, in legal contemplation and under section 580d, one...." Simon, 4 Cal.App.4th at 78

21   (quoting Freedland, 45 Cal.2d at 467).

22        The Supreme Court relied on the longstanding principle that legislation enacted to protect

23   the public is expansively interpreted to capture subterfuges and evasions in its net: "That

24   construction of a statute should be avoided which affords an opportunity to evade the act, and that

25   construction is favored which would defeat subterfuges, expediencies, or evasions employed to

26   continue the mischief sought to be remedied by the statute, or to defeat compliance with its terms,

27   or any attempt to accomplish by indirection what the statute forbids."  Freedland, 45 Cal.2d at

28   467-68; see also Western Security Bank, 15 Cal.4th at 258 (conc. & diss. op. of Mosk, J.)("our

1    courts have construed the antideficiency statutes liberally, rejecting attempts to circumvent the

2    proscriptions against deficiency judgments after nonjudicial foreclosure," citing <u>Freedland</u> and

3    <u>Simon</u>).

4           <u>Simon</u> undercut lenders' incentive to split loans in order to eliminate consumers' section

5    580d protection.  If there is a legitimate independent reason to split a loan, <u>Simon</u> does not

6    prevent it.

7           Chase reads <u>Simon</u> narrowly, as requiring that the foreclosing lender be the same as the

8    lender on the second "piggyback" mortgage at the time of foreclosure.  Even according to

9    Chase's narrow reading of <u>Simon</u>, plaintiff's allegations state a claim.

10          Here, as in <u>Simon</u>, a single lender, RMR, simultaneously originated the first and second

11   "piggyback" mortgages, both secured by plaintiff's condominium.   (Complaint ¶ 8.)   At the time

12   of the foreclosure, Chase foreclosed on the first mortgage; it "caused a non-judicial foreclosure

13   sale of VELLINE's home to occur, based on non-payment of the first mortgage."  (<u>Id</u>. ¶ 11.)

14   "Chase then attempted to collect a deficiency balance it claims is due and owing on VELLINE's

15   second mortgage."    (<u>Id</u>. ¶ 12.)  Specifically, a debt collector acting as an agent of Chase sent the

16   collection letter attached to the complaint, which identifies Chase as the "creditor."  (Complaint

17   Ex. "A.")

18          These allegations establish that Chase elected non-judicial foreclosure and conducted the

19   foreclosure sale, and was the creditor holding the second mortgage.  These facts are materially

20   indistinguishable from <u>Simon</u> and satisfy <u>Cadlerock Joint Venture, L.P. v. Lobel</u>, 206

21   Cal.App.4th 1531 (2012). RMR's transfer of the two loans does not affect the application of

22   <u>Simon</u>.  <u>Cadlerock</u> does not hold otherwise, and Chase does not argue otherwise.  Therefore,

23   Chase's motion to dismiss based on <u>Cadlerock</u> should be denied.  <u>See also</u> <u>Mann v. Wells Fargo</u>

24   <u>Bank, N.A.</u>. 2012 WL 6025781 (N.D. Cal. Dec. 4, 2012) (denying motion to dismiss based on

25   <u>Cadlerock</u>, even where first and second loans were not held by the same lender).

26

27

28

**F.    The Court Should Reject <u>Cadlerock</u> as Inconsistent with California Supreme Court Authority Interpreting Consumer Protection Statutes in General and Section 580d in Particular.**

Although it is not strictly necessary to decide this motion, plaintiff urges this Court to reject <u>Cadlerock</u> as in conflict with <u>Simon</u> and California Supreme Court authority.

Because plaintiff's claims are all state law claims, this Court applies the substantive law of California.  The Court is bound only by the decisions of the California Supreme Court, not by the decisions of the intermediate appellate courts.  <u>Vernon v. City of Los Angeles</u>, 27 F.3d 1385, 1391 (9th Cir. 1994).  "Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises."  <u>Id</u>.

<u>Simon</u> was based on the principle, "We will not sanction <u>the creation of multiple trust deeds</u> on the same property, securing loans represented by successive promissory notes from the same debtor, <u>as a means of circumventing the provisions of section 580d</u>…. Assuming, arguendo legitimate reasons do exist to divide a loan to a debtor into multiple notes thus secured, section 580d must nonetheless be viewed as controlling where, as here, <u>the senior and junior lenders and lienors are identical and those liens are placed on the same real property</u>."  <u>Id</u>. (emphasis added.)

This language should be read broadly as barring liability on a second piggyback mortgage, based not on the act of foreclosing, but on the act of loan splitting <u>at the time of origination</u>, regardless of whether the lenders are the same at the time of foreclosure.  <u>Cadlerock</u> recognized this broader reading of <u>Simon</u> and rejected it:

> The <u>Simon</u> court also suggested, in the absence of its holding, lenders would intentionally thwart the purposes of section 580d: "We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d."  But according to <u>Simon</u>, its rule must apply <u>regardless of whether thwarting section 580d was a motivating factor behind the structure of the particular loans at issue</u>: …

<u>Cadlerock</u>, 206 Cal.App.4th at 1545 (citations omitted) (emphasis added).

 <u>Cadlerock</u> is clear that the Court believed that <u>Simon</u> was wrongly decided, even if it were indistinguishable, and represents a clear departure from the Supreme Court's interpretational standard in <u>Freedland v. Greco</u>.  In the final pages of his opinion in <u>Cadlerock</u>, Justice Ikola

1   emphatically rejected <u>Simon</u>'s application of section 580d to junior liens whatsoever.  <u>Id</u>. at 1547-

2   1549.   The Court criticized "Simon and its progeny" for impermissibly "creat[ing] an equitable

3   exception to the text of section 580d."   <u>Id</u>. at 1549.   The Court narrowly and literally construed

4   section 580d, contrary to <u>Freedland</u> and longstanding California Supreme Court jurisprudence:

5   "<u>Freedland v. Greco</u>, …, which was explicitly cited by the trial court, does not authorize courts to

6   ignore the text of section 580d in favor of vindicating its underlying purposes."  <u>Id</u>. at 1548.

7          <u>Cadlerock</u> is therefore in conflict with <u>Simon</u>, and wrongly decided because it ignored

8   <u>Freedland</u> and it progeny.  <u>Cadlerock</u> encourages lenders to evade section 580d by splitting what

9   would otherwise be a single loan into one or more junior mortgages and selling them in the

10  secondary mortgage market.  An originating lender could sell these junior loans at a premium

11  because <u>Cadlerock</u> would eliminate section 580d as a defense to deficiency liability on them.

12  <u>Cadlerock</u> would thus enable lenders to partially evade anti-deficiency exposure by immediately

13  recovering loan repayment by selling piggyback juniors at a premium, free of their anti-

14  deficiency protection.

15          G.    **FCRA Preemption is Limited to the Allegations of Complaint Paragraphs 26**
                  **and 41(b).**
16

17         Chase argues that the Fair Credit Reporting Act (FCRA) preempts "in part" plaintiff's

18  Rosenthal Act, UCL, and FAL claims.  Because plaintiff bases all of her claims at last partially on

19  violations entirely independent of credit reporting, the FCRA clearly could not preempt them <u>in</u>

20  <u>toto</u>.  <u>Rex v. Chase Home Finance LLC</u>, 905 F. Supp. 2d 1111, 1151 (C.D. Cal. 2012).

21         The FCRA does not preempt plaintiff's Second (CCRAA) and Third (unlawful business

22  practice) Causes of Action at all because her credit reporting allegations are based strictly on a

23  CCRAA provision Congress expressly saved from preemption, Civil Code section 1785.25(a).

24  15 U.S.C. § 1681t(b)(1)(F). Even then, section 1681t only bars state laws that contain a

25  "requirement or prohibition" with respect to the subjects regulated by the FCRA's furnisher

26  liability provision, 15 U.S.C.§ 1681s-2.  The Ninth Circuit has ruled that the CCRAA's remedial

27  provisions (§§ 1785.25(g) & 1785.31) do not impose a "requirement or prohibition;" they

28  "merely provide a vehicle for private parties to enforce other sections, which <u>do</u> impose

1    requirements or prohibitions." <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1171 (9th

2    Cir. 2009) (emphasis in original.)

3          Under <u>Gorman</u>, the FCRA does not preempt any state law cause of action predicated on a

4    violation of the substantive requirements of section 1785.25(a), even if another state law provides

5    the remedy.  The FCRA does not preempt UCL claims to the extent they are predicated on section

6    1785.25(a), even though the UCL provides the remedy.  <u>Rex</u>, 905 F. Supp. 2d at 1151.

7          This leaves only the credit reporting allegations in the Rosenthal Act claim (¶ 26) and the

8    FAL claim (¶ 41(b) for preemption analysis.   Because these allegations arguably go beyond the

9    section 1785.25 standard, plaintiff is willing to strike paragraphs 26 and 41(b) from the

10   Complaint and to have the Court so order.

11         **H.    Plaintiff's Second Cause of Action, for Violation of the State Credit Reporting
                   Statute, States a Claim.**
12

13         Plaintiff's Second Cause of Action challenges Chase's use of the credit reporting system

14   as a means of coercing borrowers to pay deficiencies barred by section 580d.   Civil Code section

15   1785.25 (a) states that "A person shall not furnish information on a specific transaction or

16   experience to any consumer credit reporting agency if the person knows or should know the

17   information is incomplete or inaccurate."

18         The complaint alleges that after conducting foreclosures, Chase reports balances against

19   which section 580d bars personal liability to credit reporting agencies liability as "late,"

20   "chargeoff," or in "collection," without any qualification that the loans have become non-

21   recourse.  (Complaint ¶ 30.)    Chase's reports leave the misleading impression that "borrowers

22   are personally liable" to pay the balances, have "failed to pay debts," and "are financially

23   irresponsible for not paying such debts. "  (<u>Id</u>. ¶ 31.)    This violates section 1785.25(a) because

24   the impression left is "incomplete and inaccurate;" borrowers are entirely within their legal rights

25   in not paying in reliance on the protection of the anti-deficiency laws.[2]

26   _____

27       [2]   In <u>Abdelfattah v. Carrington Mortg. Services LLC</u>, 2013 WL 495358 (N.D. Cal. Feb 7,
         2013), plaintiff argued that section 580d outright precluded the reporting of the deficiency to
28       credit reporting agencies following a non-judicial foreclosure sale because it extinguished the
         debt.  Here, plaintiff does not claim that reporting is "precluded," only that Chase should report

1    Plaintiff adequately alleges that Chase has issued such a misleading credit report as to

2    plaintiff's second mortgage.  (Id. ¶ 30 (at 8:2); ¶ 31 (at 8:11).)  Plaintiff has expressly alleged that

3    Chase's practice  has caused damage, including reduced credit score, impairment of credit, and

4    increased cost of credit.  (Id. ¶ 31.)    The Court in Rex denied Chase's 12(b)(6) motion on

5    substantially similar allegations.  Rex, 905 F. Supp. 2d at 1157 ("Such allegations are all that is

6    required to meet the notice pleading standard").

7        **I.      Plaintiff's UCL and FAL Causes of Action Are Sufficient.**

8        Plaintiff has alleged injury in fact and loss of money or property as a result of Chase's

9    violations of the Rosenthal Act and the CCRAA.  (Complaint ¶ 30.)   UCL standing does not

10   require that the plaintiff make a payment to the defendant, only that she suffer a pecuniary loss.

11   Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 337 (2011) ("we hold ineligibility for restitution

12   is not a basis for denying standing under section 17204 and disapprove those cases that have

13   concluded otherwise"); Rex, 905 F. Supp. 2d at 1146.

14       The complaint adequately alleges that plaintiff suffered credit reporting damage.

15   (Complaint ¶ 32.)   Damage to credit is a loss or money or property within the meaning the UCL .

16   Rex, 905 F. Supp. 2d at 1147.

17       Under notice pleading there is no requirement of the specificity Chase seems to demand

18   for the Third claim, under the UCL unlawfulness prong.  Rule 9(b) would apply only to the

19   Fourth claim, under the UCL "fraud prong."  "A pleading is sufficient under Rule 9(b) if it

20   identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer

21   to the allegations. While statements of the time, place and nature of the alleged fraudulent

22   activities are sufficient, mere conclusory allegations of fraud are insufficient." Moore v. Kayport

23   Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).

24       Plaintiff has alleged time, place, and nature of the fraudulent collection activity.

25   (Complaint ¶ 12.)   Plaintiff has only her personal credit report reflecting what Chase reported;

26

27   _____

28   the deficiency accurately.  As noted above, plaintiff does not contend that section 580d
     "extinguishes" the debt, only personal liability for it.

1  she does not have access to the exact time when Chase's reported the second loan to the credit

2  bureaus.  However, the complaint meets the Ninth Circuit standard by sufficiently alleging the

3  type, character, and substance of the reports in question so Chase can prepare its answer.  (Id. ¶¶

4  30-32.)  "Rule 9(b) may be relaxed as to matters within the opposing party's knowledge."  Moore,

5  885 F.2d at 540.

6  　　　　　Chase's argument that the FAL applies only to "widespread promotional activities" is

7  unfounded.  "A violation of the UCL's fraud prong is also a violation of the false advertising

8  law."  In re Tobacco II Cases, 46 Cal. 4th 298, 312 n. 8 (2009).

9  　　　　**J.      The Court Should Deny Chase's Motion to Strike Plaintiff's Class**
   　　　　**Allegations.**

10

11  　　　　　Chase's motion to strike plaintiff's class allegations is superfluous because it is made on

   largely the same grounds as Chase's 12(b)(6) motion.[3]   A motion to strike class allegations

12  should be granted only "if it is obvious from the pleadings that the proceeding cannot possibly

13  move forward on a classwide basis."  Manning v. Boston Medical Center Corp., 725 F.3d 34, 59

14  (1st Cir. 2013).  Courts have "repeatedly emphasized that striking class allegations is "even more

15  disfavored [than a typical motion to strike] because it requires a reviewing court to preemptively

16  terminate the class act aspects of … litigation" without development of any factual record.  Id.

17  Accordingly, granting a motion to strike class allegations is "rare."  Cholakyan v. Mercedes-Benz

18  USA, LLC, 796 F.Supp.2d 1220, 1245 (C.D. Cal. 2011).

19

20  DATED:  July 3, 2014              /s/ Arthur D. Levy
   　　　　　　　　　　　　　　　　ARTHUR D. LEVY (SB # 95659)

21
   　　　　　　　　　　　　　　　　BRYAN KEMNITZER (SB # 66401)
22  　　　　　　　　　　　　　　　　KRISTIN KEMNITZER (SB # 278946)
   　　　　　　　　　　　　　　　　KEMNITZER, BARRON & KRIEG, LLP
23
   　　　　　　　　　　　　　　　　ELIZABETH S. LETCHER (SB # 172986)
24  　　　　　　　　　　　　　　　　HOUSING AND ECONOMIC RIGHTS ADVOCATES

25  　　　　　　　　　　　　　　　　Attorneys for Plaintiff
   　　　　　　　　　　　　　　　　BARBARA VELLINE
26

27  _____

28  　　　[3]   The exception is the four-year class period, which simply tracks the UCL's four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208.